IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KETURAH WINTERS, *et al.*,<br>　　　　　　Plaintiffs,<br><br>　v.<br><br>AKZO NOBEL SURFACE CHEMISTRY, LLC,<br>*et al.*,<br>　　　　　　Defendants. | CIVIL ACTION<br>No. 19-5398 |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**　　　　　　　　　　　　　　　　　　　　　　　　　　　**APRIL 27, 2020**

### I.　　FACTUAL BACKGROUND

This dispute arises out of Plaintiff Keturah Winters' alleged exposure to the chemical Alcosphere Lavender Meadows, "a highly toxic, ultrahazardous, and abnormally dangerous chemical, in powder form." (ECF No. 22, ¶ 27.) Winters was employed by American Airlines as a Fleet Service Agent at Philadelphia International Airport in Philadelphia, Pennsylvania. (*Id.*) On March 24, 2018, while Winters was working in this capacity, a fiber drum containing Alcosphere Lavender Meadows, which allegedly lacked the proper liner, made contact with a "'pull-in-hook' roller" and was punctured. (*Id.*, ¶¶ 27-31.)

As a result, "the highly toxic, ultrahazardous, and abnormally dangerous powdered chemical contents of the drum were . . . expelled and permeated the vicinity of the aircraft where Plaintiff, Keturah Winters[,] was situated . . ." exposing her to the substance. (*Id.*, ¶ 32.) Consequently, Winters sustained serious and permanent injuries, including "respiratory distress, acute asthma exacerbation, dyspnea, mucosal edema, chronic rhinitis, Reactive Airways Dysfunction Syndrome (RADS) secondary to toxic exposure, mental and emotional distress . . .

1

an anxiety reaction and shock to her nerves and nervous system; and other neurological, psychological[,] and respiratory injuries, the full extent of which is yet to be determined." (*Id*., ¶ 73.)

Plaintiff Keturah Winters has now brought the following claims against the below-named defendants:

I. Negligence, Carelessness, and Recklessness against Defendant Nouryon Surface Chemistry, LLC ("Nouryon SC");
II. Strict Liability against Defendant Nouryon SC;
III. Negligence, Carelessness, and Recklessness against Defendant BTX Global Logistics ("BTX");
IV. Strict Liability against Defendant BTX;
V. Negligence, Carelessness, and Recklessness against Defendant Bill Timpano;
VI. Strict Liability against Defendant Bill Timpano;
VII. Negligence, Carelessness, and Recklessness against Defendant Worldwide Flight Services ("Worldwide");
VIII. Strict Liability against Defendant Worldwide;
IX. Negligence, Carelessness, and Recklessness against Defendant Spray-Tek, Inc. ("Spray-Tek");
X. Strict Liability against Defendant Spray-Tek;
XI. Negligence, Carelessness, and Recklessness against Defendant BDP International, Inc. ("BDP");
XII. Strict Liability against Defendant BDP;
XIII. Negligence, Carelessness, and Recklessness against Defendant Hi-Tech Packing & Crating, Inc. ("Hi-Tech");
XIV. Strict Liability against Defendant Hi-Tech;
XV. Negligence, Carelessness, and Recklessness against Defendants John Doe 1-10 and ABC Corporations 1-10;
XVI. Strict Liability against Defendants John Doe 1-10 and ABC Corporations 1-10; and

(*Id*., ¶¶ 71-147.)

Ms. Winter's husband, Eric Winters, is also a plaintiff in this dispute and has asserted a claim for loss of consortium against all defendants. (*Id*., ¶¶ 148-51.)

This matter is now before the Court on Defendant Nouryon SC's Motion to Dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 23.) Nouryon SC asserts that it is not subject to general jurisdiction in the Commonwealth of

Pennsylvania as "at all relevant times, it neither was organized under the laws of, nor maintained its principal place of business in, Pennsylvania." (ECF No. 23 at 2.) It further proposes that it is not subject to specific jurisdiction within this Commonwealth because "Plaintiffs' claims do not arise out of Nouryon SC's Pennsylvania-related activities. (*Id*.) We analyze each argument in turn.

## II.  LEGAL STANDARD

Exercising general jurisdiction over a defendant is appropriate where a defendant's activities within a state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)). The Supreme Court has clarified that "'. . . the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Generally, for corporations, this is the place of incorporation and the corporation's principal place of business, although general jurisdiction may be exercised where a corporation's affiliations with a forum state are so continuous and systematic as to render it essentially at home there. *Daimler*, 571 U.S. at 137-139 (citing *Goodyear*, 564 U.S. at 919).

The exercise of specific jurisdiction, in contrast, turns on the connection between the forum jurisdiction and the underlying controversy; it is limited to issues arising out of or related to the controversy establishing jurisdiction. *Daimler*, 571 U.S. at 919. Indeed, the Supreme Court has long held that, to exercise specific jurisdiction, there must be "some act by which the defendant

3

purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (holding that an Oklahoma court could not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma."); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (holding that the "substantial connection" between a defendant and the forum, necessary for a finding of minimum contacts, must derive from an action purposefully directed toward the forum state and that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

Pennsylvania's long-arm statute allows us to exercise jurisdiction over nonresident defendants to the full extent permitted by the United States Constitution. FED. R. CIV. P. 4(k)(2); 42 PA. CONS. STAT. § 5322(b). When a defendant challenges the court's personal jurisdiction, the plaintiff then bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). To analyze these facts, we rely upon the three-part framework established by our Third Circuit Court of Appeals. First, the plaintiff must show that the defendant purposefully directed its activities at the forum. *Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citations omitted). Second, the litigation must arise out of or relate to at least one of those activities. *Id.* Third, if the plaintiff

4

fulfills the first two requirements, we may consider whether the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476.)

### III.  ANALYSIS

#### a. Nouryon SC is not Subject to General Jurisdiction in the Commonwealth of Pennsylvania

First, we analyze Nouryon SC's claim that "exercising general jurisdiction over it would violate the [Due Process Clause of the] Fourteenth Amendment." (ECF No. 23 at 8.) Nouryon SC is alleged to be a "global leader in the chemical manufacturing industry, and its products enable other companies to manufacture everyday items such as paper, plastics, and personal-care items." (*Id*. at 2.) It is a Delaware limited-liability company with its headquarters in Chicago, Illinois. (*Id.* at 7.) Because it is incorporated in Delaware and has its principal place of business in Illinois, Nouryon SC argues that it is not subject to general jurisdiction in Pennsylvania. (*Id*. at 7-8.) Given these facts, and that Plaintiffs do not contest them, we find that exercising general jurisdiction over Nouryon SC would not be appropriate.

#### b. Nouryon SC is not Subject to Specific Jurisdiction in the Commonwealth of Pennsylvania in this Dispute

Second, we turn to Nouryon SC's argument that it is further not subject to specific jurisdiction in Pennsylvania. In their Amended Complaint, Plaintiffs contend that Defendant Nouryon SC (referred to therein as "Akzo") is "a leading global paints and coatings company and a major producer, manufacturer, storer, and loader of specialty chemicals which are ultrahazardous, dangerous, and highly toxic." (ECF No. 22 at ¶ 34.) Plaintiffs further claim that

5

Nouryon SC "was responsible for the placing of said . . . chemicals in containers which were safe and secure for use, handling, and transportation to their ultimate destination, including the County of Philadelphia, Pennsylvania." (*Id*. at ¶ 36.)

Nouryon SC, however, asserts that "nothing in the Amended Complaint suggests Nouryon SC purposefully directed the shipment [of Alcosphere Lavender Meadows] to Pennsylvania or otherwise 'manifest[ed] an intention to submit to' Pennsylvania's sovereignty." (ECF No. 32 at 10 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011)). Indeed, Nouryon SC states that although Plaintiffs allege that it facilitated the chemical's transportation, placing it into the general stream of commerce, "they never suggest Nouryon SC knew the shipment might pass through Pennsylvania, let alone that Nouryon SC directed the shipment there." (*Id*.)

Nouryon SC contends the following regarding its involvement in this case: (1) the Alcosphere Lavender Meadows was ordered by a Netherlands-based client; (2) the order was received and processed by employees at Nouryon SC's Illinois headquarters, with any decisions about design, labeling, warnings, or instructions being made at Nouryon SC's headquarters or research facilities, all of which are located outside of Pennsylvania; (3) the chemical was manufactured and packaged in New Jersey by an independent contractor (Spray-Tek, Inc.); (4) once manufacturing was completed, Nouryon SC contacted the Chicago, Illinois office of another independent contractor (BDP International) to arrange international airfreight; (5) the chemicals were then transported from New Jersey to New York, where a BDP International subcontractor (Hi-Tech Packing & Crating) prepared the goods for shipment and held them until Nouryon SC's customer's agent retrieved them. (*Id*. at 4-5). Nouryon SC further asserts that, as the terms of delivery for this shipment were "'FCA' . . . delivery would be complete once the customer or its agent retrieved the goods from an agreed-upon location . . . and [thus] Nouryon SC's role in the

6

sale would be complete once the customer or its agent picked up the order." (*Id*. at 4.)

Plaintiffs, however, assert that Nouryon "purposefully directed business activities to Pennsylvania and is thus subject to [specific personal jurisdiction under] Pennsylvania's Long Arm Statute." (ECF No. 32 at 10.) First, they suggest that Nouryon is "subject to specific personal jurisdiction in Pennsylvania because [it] shipped the merchandise . . . which caused Plaintiffs' injuries, into Pennsylvania . . ." (*Id.* at 12.) In so arguing, Plaintiffs cite Pennsylvania's long-arm statute—which permits the exercise of jurisdiction where a defendant has engaged in "[t]he shipping of merchandise directly or indirectly into or through this Commonwealth." (*Id.* at 11-13 (quoting 42 PA. CONS. STAT. § 5322(a)(1)(2)).).

While Plaintiffs accurately quote Pennsylvania's long-arm statute, their assertion that "the Constitutional test for specific personal [j]urisdiction [is] codified" therein is inaccurate. (*Id*. at 10.) Pennsylvania's long-arm statute provides reach that is "coextensive with the limits placed on the states by the federal Constitution," meaning that the constitutional limitations established by the Supreme Court must be followed. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1995). Notably, in *Asahi*, the Supreme Court emphasized one such limitation, holding that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co.*, 480 U.S. at 112.

Additionally, per the undisputed terms of Nouryon SC's agreement with its Netherlands-based customer, its obligations ended once that customer's agent retrieved the Alcosphere Lavender Meadows from the agreed-upon location (*See* ECF No. 23, Ex. B-2 (noting "Terms of Delivery: FCA Middlesex, NJ Plant").). As such, we find that Nouryon SC did not purposefully direct its activities toward Pennsylvania, and that we cannot exercise jurisdiction on these grounds.

7

Second, Plaintiffs claim that Nouryon SC purposefully directed its business activities at Pennsylvania by contracting with two Pennsylvania corporations, Spray-Tek, Inc. and BDP International, in connection with this transaction.  (ECF No. 32 at 13.)  We cannot exercise specific personal jurisdiction over a defendant based solely on third-parties' connections to this Commonwealth.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding that "the relationship [among the defendant, the forum, and the litigation] must arise out of contacts that the 'defendant *himself*' creates with the forum State") (quoting *Burger King Corp.*, 471 U.S. at 475).  Indeed, the Supreme Court has emphasized that the minimum contacts analysis assesses the *defendant's* contacts with the forum, and "not the defendant's contacts with persons who reside there." *Id*. at 285 (citations omitted).

The Supreme Court has upheld the exercise of specific personal jurisdiction where defendants purposefully reached out beyond their state and into another "by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State . . . or by circulating magazines to 'deliberately exploit' a market in the forum State."  *Id*. (citations omitted).  Here, there is no assertion that Nouryon SC reached into Pennsylvania in connection with this transaction.  Plaintiffs do not contest Nouryon SC's assertion that (1) for its contact with Spray-Tek, Inc., it reached into New Jersey, not Pennsylvania; and that (2) for its contact with BDP International, Nouryon SC worked with BDP's employees and agents in Illinois, New York, and New Jersey, and did not reach into Pennsylvania.  As such, we deem the exercise of specific personal jurisdiction on these grounds improper.

Third, Plaintiffs assert that exercising specific jurisdiction is permissible in Pennsylvania because Nouryon SC maintains an office located within the Commonwealth, and that "[i]t would [thus] be entirely unfair to make Plaintiffs litigate this case based on these facts in a distant jurisdiction . . ." (ECF No. 32 at 14.)   The Third Circuit has emphasized that "'the relationship

8

among the defendant, the forum, and the litigation' is crucial" when assessing if due process is met. *Allaham*, 635 F. App'x at 39 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). The Supreme Court has also underscored that specific jurisdiction depends on an affiliation between the forum and the underlying controversy. *Goodyear*, 564 U.S. at 919. Here, Plaintiffs have offered no facts in support of the assertion that this office in Radnor, Pennsylvania was at all connected to the subject of this litigation. (ECF No. 32 at 8; *See also* ECF No. 22.) Indeed, Plaintiffs do not dispute Nouryon SC's assertion that all of Nouryon SC's business in connection with this transaction was conducted from Nouryon SC's headquarters in Illinois. As such, we cannot exercise specific jurisdiction on this basis.

### IV. WE TRANSFER ALL CLAIMS AGAINST DEFENDANT NOURYON SC TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

Even while viewing all evidence in the light most favorable to Plaintiffs, we find that we cannot properly exercise jurisdiction over Nouryon SC in this matter for the foregoing reasons. However, in this Circuit, "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP*, 946 F.3d at 132. Indeed, the applicable statute mandates that a district court "'shall' transfer the case rather than dismiss it 'if [doing so] is in the interest of justice.'" *Id*. (quoting 28 U.S.C. § 1631.) Although we may transfer a case *sua sponte*, we need not investigate on our own all other courts in which the case "might" or "could have" been brought. *Id*. (citations omitted). Notwithstanding, we must make some findings under § 1631, at least when the parties identify other courts that might be able to hear the case. *Id*. Upon considering the balance of ongoing litigation and the interests of the parties, we have determined that the interest of justice weighs heavily in favor of transferring, rather than dismissing, the claims against

9

Nouryon SC.

No party in this dispute has identified another court that might be able to hear this case. However, Nouryon SC admits to being subject to general jurisdiction in the State of Delaware, as it is organized as a Delaware limited-liability company (ECF No. 23 at 2.) Transferring these claims to the United States District Court for the District of Delaware—located in a neighboring district—would further address Plaintiffs' concern that it would "be entirely unfair to make Plaintiffs litigate this case based on these facts in a distant jurisdiction . . ." (ECF No. 32 at 14.)

The Third Circuit has held that "where a case could have been brought against some defendants in the transferee district, the claims against those defendants may be severed and transferred while the claims against the remaining defendants, for whom transfer would not be proper, are retained." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009). Before doing so, however, we are directed to "weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *Id*. (citations omitted). We understand that by severing these claims we are separating the manufacturer of the product that allegedly caused Plaintiffs' injuries. We also recognize, however, that the District of Delaware and the Eastern District of Pennsylvania are neighboring districts[1], and that any inconvenience Plaintiffs experience based on this transfer does not outweigh the cost of dismissing these claims outright or transferring to another court of competent jurisdiction (*e.g.*, United States District Court for the Northern District of Illinois).

---

[1] We further note that this matter arises from an injury that occurred at the Philadelphia International Airport. (*See* ECF No. 23.) We take judicial notice of the fact that the airport is located very close to the border between the Eastern District of Pennsylvania and the District of Delaware.

10

## V. CONCLUSION

As such, lacking personal jurisdiction over Nouryon SC, we sever and transfer all claims by Plaintiffs against Nouryon SC to the United States District Court for the District of Delaware. An appropriate Order follows.